**Motions for Rehearing Denied; Reversed and Rendered; Opinion filed April 18, 2013 Withdrawn, and Substitute Opinion filed October 17, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00357-CV

---

### FRONTIER LOGISTICS, L.P., FLPCW, L.P., GEORGE COOK, GLENN WISEMAN, JAMES MADLER, AND CHRISTY FULTON, Appellants

### V.

### NATIONAL PROPERTY HOLDINGS, L.P., MICHAEL PLANK, AND RUSSELL PLANK, Appellees

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2008-36847A**

---

## S U B S T I T U T E   O P I N I O N [1]

A real estate developer sued two individuals and a limited partnership asserting various claims. The defendants filed third-party claims against various third-party defendants seeking defense and indemnity based upon an agreement to

---

[1] We deny the appellees' motion for rehearing and the appellants' motion for rehearing. We withdraw the opinion issued in this case on April 18, 2013, and issue this substitute opinion.

which the third-party plaintiffs and the third-party defendants are parties. The trial court granted summary judgment in favor of the third-party plaintiffs and denied in part the summary-judgment motion filed by the third-party defendants. The trial court concluded that most of the claims asserted by the real estate developer against the defendants were within the scope of the indemnity provision. After severing the third-party claims from the rest of the lawsuit, the trial court conducted a bench trial on damages and attorney's fees and rendered a money judgment in favor of the third-party plaintiffs. On appeal, we conclude as a matter of law that the claims asserted against the third-party plaintiffs do not fall within the scope of the indemnity provision under the agreement's unambiguous language. Accordingly, we reverse the trial court's judgment and render judgment that the third-party plaintiffs take nothing against the third-party defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2008, appellees/third-party plaintiffs National Property Holdings, L.P., Michael Plank, and Russell Plank (collectively, the "Plank Parties"), appellants/third-party defendants Frontier Logistics, L.P., FLPCW, L.P., George Cook, Glenn Wiseman, James Madler, and Christy Fulton (collectively, the "Frontier Parties"), and others entered into a Settlement Agreement and Release ("Settlement Agreement"). Gordon Westergren was not a party to the Settlement Agreement. In the Settlement Agreement, the Frontier Parties promised to indemnify, defend, and hold harmless National Property Holdings, L.P. ("National Property") and other entities from and against certain claims and other matters.[2]

Three months after the execution of the Settlement Agreement, Gordon Westergren filed a lawsuit against the Plank Parties, asserting various claims for breach of contract and torts and seeking a money judgment. The Plank Parties

---

[2] The language and scope of this provision are addressed in the analysis section below.

demanded defense and indemnity from the Frontier Parties. After the Frontier Parties refused this demand, the Plank Parties asserted third-party claims for defense and indemnity against the Frontier Parties based only upon the Settlement Agreement's indemnity provision (the "Indemnity Provision"). The Plank Parties alleged that they are indemnitees under this provision and that the claims asserted by Westergren against them fall within its scope. The Plank Parties sought indemnity for any sums that they might be compelled to pay Westergren based on his claims, as well as the costs of defending against Westergren's claims and attorney's fees and costs for the prosecution of the third-party claims. The Frontier Parties filed counterclaims in which they sought, among other things, to recover their costs and reasonable and necessary attorney's fees under a prevailing-party provision in the Settlement Agreement, if they were to prevail in their defense against the Plank Parties' claims.

The Frontier Parties filed a motion for summary judgment seeking a judgment that the Plank Parties take nothing on their third-party claims. The Frontier Parties asserted that, under the unambiguous language of the Settlement Agreement, Westergren's claims do not fall within the scope of that agreement's Indemnity Provision. The trial court granted this motion in part, ruling that the Plank Parties are not entitled to defense and indemnity as to Westergren's claim against the Plank Parties based upon their failure to pay $1 million, but the trial court denied the motion as to all of Westergren's other claims.

The Plank Parties moved for summary judgment that, under the unambiguous language of the Settlement Agreement, the Frontier Parties owe the Plank Parties a defense and indemnity as to all of Westergren's claims except his claim against the Plank Parties based upon their failure to pay $1 million. The trial court granted this summary-judgment motion.

3

A jury trial on the claims between Westergren and the Plank Parties began on September 13, 2010. Effective that same day and pursuant to an agreement between the Plank Parties and the Frontier Parties, the trial court severed the third-party claims into a separate case. In December 2010, the trial court rendered judgment in the unsevered case that Westergren take nothing against the Plank Parties and that the Plank Parties take nothing against Westergren.[3]

On March 24, 2011, the trial court conducted a bench trial in the severed case regarding the Plank Parties' damages. The trial court rendered judgment that the Plank Parties recover the following amounts from the Frontier Parties: (1) $925,076 for reasonable attorney's fees, expert-witness fees, and expenses relating to the Plank Parties' defense of Westergren's claims; (2) $364,351 for reasonable attorney's fees and costs for the prosecution of the third-party claims by the Plank Parties, (3) conditional awards of appellate attorney's fees, and (4) prejudgment and postjudgment interest. Under the judgment, the trial court denied the Frontier Parties the relief they requested in their counterclaims. The Frontier Parties have appealed. The Plank Parties have not appealed.

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the

---

[3] Westergren and the Plank Parties appealed from that judgment, and those appeals have been decided by this court in a separate, consolidated case. *See Westergren v. National Property Holdings, L.P.*, Nos. 14-11-00058-CV, 14-11-00229-CV,—S.W.3d—,—, 2013 WL 4857689, at *26 (Tex. App.—Houston [14th Dist.] June 28, 2013, pet. filed).

nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

As discussed below, we may review the trial court's denial in part of the Frontier Parties' summary-judgment motion because the Frontier Parties and the Plank Parties both moved for summary judgment on the same issue. *See FDIC v. Lenk*, 361 S.W.3d. 602, 611–12 (Tex. 2012); *Gastar Exploration v. U.S. Specialty Ins. Co.*, —S.W.3d—,—, 2013 WL 3693603, at *4 (Tex. App.—Houston [14th Dist.] Jul. 16, 2013, no pet. h.). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242, 247 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Because each party was a movant, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *Id*.

### III. ISSUES PRESENTED

On appeal, the Frontier Parties present the following issues:

(1)    Did the trial court err in granting the Plank Parties' summary-judgment motion?

(2)    Did the trial court err in denying in part the Frontier Parties' summary-judgment motion?

(3)    Is the Indemnity Provision ambiguous, and, if so, is the extrinsic evidence disputed, so that summary judgment for either party was improper?

5

(4) Did the trial court err to the extent it overruled the Frontier Parties' objections to the Plank Parties' summary-judgment evidence and sustained the Plank Parties' objections to the Frontier Parties' summary-judgment evidence?

In a conditional cross-point, the Plank Parties assert that the trial court erred in ruling that the Frontier Parties did not owe the Plank Parties a defense and indemnity for Westergren's claim against the Plank Parties based upon their failure to pay $1 million.

## IV. ANALYSIS

### A. Do the claims asserted by Westergren fall within the scope of the Indemnity Provision?

The main issue in this case is whether the claims Westergren asserted against the Plank Parties fall within the scope of the Indemnity Provision. In construing agreements, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the agreement. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* But, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We cannot rewrite the contract or add to its language under the guise of interpretation. *See American Mfrs. Mut. Ins. Co.*, 124

S.W.3d at 162.  Rather, we must enforce the contract as written.  *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

The Plank Parties and the Frontier Parties are parties to the Settlement Agreement.  Under the unambiguous language of the Settlement Agreement, Westergren is not a party to the Settlement Agreement.[4]  In Section I of the Settlement Agreement, the parties recite that "[t]his Settlement Agreement resolves matters in dispute between the parties . . . ."  Section V of the Settlement Agreement provides as follows:

### MUTUAL RELEASES THROUGH DATE OF THIS AGREEMENT

In consideration of the promises set forth above and the execution of Exhibits "A-J", [the Frontier Parties] release all claims, causes of action . . . as well as all losses and liabilities with respect to any acts or omissions by [the Plank Parties and related entities] with respect to the Port Crossing Project or otherwise previously asserted by [the Frontier Parties] or any claim which could be asserted by [the Frontier Parties] for any acts or omissions that have occurred as of [March 17, 2008] with respect to [the Plank Parties and related entities], whether known or unknown.  Such release shall include, without limitation, any claim that [any of the Frontier Parties] has or had a right to purchase any portion of, or be a partner or other investor in any entity owning a portion of, the Port Crossing Project now or hereafter owned by [Port Crossing Land, L.P.] or any affiliate of [Port Crossing Land, L.P.], including, without limitation, the land described in Exhibits "B" and "C", respectively.  The RLX Partnership Agreement and PRL Partnership Agreement shall be deemed to [be] amended to be consistent with the release of any right by [the Frontier Parties] or any affiliated person or entity to participate in the ownership, directly or indirectly, of any other land owned currently or previously owned at any time by the LaPorte 81 Partnership, Stuart Haynsworth, or any land described in any exhibits attached to the PRL

---

[4] Westergren did not sign the Settlement Agreement, and there is no language in that agreement indicating that Westergren is a party.  Instead, the Agreement recites that Westergren is a partner in Frontier Logistics, L.P. and FLPCW, L.P. and that Westergren "is not joining in this Agreement as one of the Frontier Parties."

Partnership Agreement and RLX Partnership Agreement.

A.     [The Plank Parties and each entity owned, directly or indirectly, in whole or in part, by any of the Plank Parties] release [the Frontier Parties] *(but not Westergren)* from any claims or causes of action of whatsoever nature, whether known or unknown . . . arising out of any acts or omissions of [the Frontier Parties] that have occurred as of [March 17, 2008] or any obligation to pay a guaranty fee or related fee in connection with the Northern Trust financing arranged by [Michael Plank] for RLX.

B.     [The Frontier Parties] release [the Plank Parties and any other Plank entities] from any liability for any acts or omissions of [the Plank Parties and any other Plank entities] for any defamatory or disparaging statements made by [the Plank Parties and any other Plank entities] against [the Frontier Parties] as of [March 17, 2008] relating to the Port Crossing Project or otherwise.

C.     [The Frontier Parties] hereby indemnify, defend and hold harmless [the Plank Parties and any other Plank entities] from and against all claims, causes of action (including, without limitation, fraud in a real estate transaction, breach of fiduciary duties, conversion, appropriation of business opportunities, breach of contract and negligent representation), as well as all losses and liabilities with respect to any acts or omissions of the [the Plank Parties and related entities] with respect to the Port Crossing Project that [are] asserted by Westergren by, through or under [one of the Frontier Parties] *or any other claim asserted by Westergren which is covered by the release granted by [the Frontier Parties] pursuant to [Section V of the Settlement Agreement].*

D.     The Parties agree that this Release encompasses all acts or omissions by any of the Parties as of [March 17, 2008].  The Frontier Parties acknowledge that the Frontier Parties have had an opportunity to review all financial records and other financial information of RLX and PRL desired by the Frontier Parties.[5]

The Indemnity Provision (Section V, Part C, above) is the only indemnity contained in the Settlement Agreement.  Under the unambiguous language of the

---

[5] (italics added).

Settlement Agreement, for the claims asserted by Westergren against the Plank Parties in the unsevered case (the "Westergren Claims") to be within the scope of this provision, these claims must either (1) be "asserted by Westergren by, through or under [one of the Frontier Parties]" or (2) be "asserted by Westergren" and "covered by the release granted by [the Frontier Parties] pursuant to [Section V of the Settlement Agreement]." Neither in their summary-judgment motion nor on appeal have the Plank Parties sought defense and indemnity by arguing that the Westergren Claims fall within the first category. Therefore, the issue presented is whether the Westergren Claims fall within the second category.[6] The Westergren Claims are asserted by Westergren, so in conducting this inquiry we focus on whether the Westergren Claims are "covered by the release granted by [the Frontier Parties] pursuant to [Section V of the Settlement Agreement]."

Under the Settlement Agreement's unambiguous language, Westergren is not a party to the agreement, and the agreement contains no release by Westergren of any of his claims. In Section V of the Settlement Agreement, the Frontier Parties release various claims and rights against the Plank Parties, but the Frontier Parties do not purport to release any claims that Westergren has against the Plank Parties.[7] Under the plain language of the Settlement Agreement, the Westergren Claims are not within the scope of the releases by the Frontier Parties contained in Section V of the Settlement Agreement. The Plank Parties agree that the Settlement Agreement contains no releases of any claims belonging to Westergren. Nonetheless, the Plank Parties argue that the Indemnity Provision includes all claims by Westergren that are of the same description as the claims by the Frontier

---

[6] A review of the Westergren Claims shows that they are not asserted by Westergren by, through, or under one of the Frontier Parties.

[7] In the Plank Parties' release of various claims against the Frontier Parties, claims against Westergren are expressly excluded from the scope of the release.

Parties that were released in the Section V of the Settlement Agreement. Under the Plank Parties' argument, "covered by the release" would be construed to mean "would be covered by the release if Westergren were a releasing party." It is not reasonable to construe "covered by the release" to include matters not covered by the release. The Plank Parties' construction is not reasonable because it adds words to the agreement and is contrary to the plain meaning of the language used. *See American Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 162; *Coastal Terminal Operators v. Essex Crane Rental Corp.*, No. 14-02-00627-CV, 2004 WL 1795355, at *5–6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2004, pet. denied) (mem. op.).

The Plank Parties assert that a contrary construction would render this part of the Indemnity Provision meaningless. But, under the construction outlined above, this part of the indemnity would cover claims that the Frontier Parties release in Section V of the Settlement Agreement that Westergren asserts as an assignee following assignment of the claims by one or more of the Frontier Parties to Westergren. Thus, this construction does not render any part of the Settlement Agreement meaningless. The Plank Parties also rely upon parol evidence regarding the negotiating and drafting of the Settlement Agreement. But, to the extent that this parol evidence contradicts the plain meaning of the Settlement Agreement, this evidence is incompetent to change the agreement's unambiguous language. *See White Oak Operating Co., LLC v. BLR Const. Companies, LLC*, 362 S.W.3d 725, 734 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The Plank Parties argue that it would make no sense for them to obtain an indemnity regarding claims within the scope of the Frontier Parties' releases in the Settlement Agreement. According to the Plank Parties, this would make no sense because suit on these released claims would constitute a breach of the release portion of the Settlement Agreement, which would give rise to a claim for breach

of the Settlement Agreement. But, the release language in the Settlement Agreement provides the released parties with only an affirmative defense in a lawsuit on a released claim. *See Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993); *Westergren v. National Property Holdings, L.P.*, Nos. 14-11-00058-CV, 14-11-00229-CV,—S.W.3d—,—, 2013 WL 4857689, at *24 (Tex. App.—Houston [14th Dist.] June 28, 2013, pet. filed). Suit on a released claim by one of the releasing parties does not give rise to a claim by the released parties for breach of the release portion of the Settlement Agreement. *See Dresser Indus.*, 853 S.W.2d at 508 (Tex. 1993); *Westergren*,—S.W.3d at —, 2013 WL 4857689, at *24.

The Plank Parties assert that the scope of the matters addressed by the parties to the Settlement Agreement is broader than the scope of that agreement under the Frontier Parties' argument. The Plank Parties also assert that the definition of "Port Crossing Project" shows that the Settlement Agreement addressed matters dealing with property on the west side of Powell Road as well as on the east side of Powell Road, contrary to one of the Frontier Parties' arguments. The Plank Parties also point out that Westergren made more expansive claims in his original petition than he did in later amended petitions, including claims regarding property on the west side of Powell Road as well as on the east side of Powell Road. Presuming, without deciding, that all of the foregoing assertions are correct, they would not change our construction of the Indemnity Provision.

In the unsevered case, Westergren did not assert at any time a claim assigned to him by one of the Frontier Parties or a claim of one of the Frontier Parties that was released in the Settlement Agreement. Under the unambiguous language of the Settlement Agreement, the Westergren Claims are not "covered by the release granted by [the Frontier Parties] pursuant to [Section V of the Settlement

11

Agreement],” and thus, as a matter of law, these claims are not within the scope of the Indemnity Provision.[8] Therefore, the Plank Parties' third-party claims fail as a matter of law, and the trial court erred in granting the Plank Parties' summary-judgment motion.[9] Accordingly, we sustain the Frontier Parties' first issue.[10]

**B.     May this court review the trial court's denial in part of the Frontier Parties' motion for summary judgment?**

In their second issue, the Frontier Parties assert that the trial court erred to the extent it denied their summary-judgment motion. In *CU Lloyd's of Texas v. Feldman*, the Supreme Court of Texas held that, before a court of appeals may reverse summary judgment for one party and render judgment for the other party, each party must have sought a final judgment in its respective motion for summary judgment, unless an exception applies involving claims for declaratory relief. *See CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam). Under this case, we would not be able to render judgment for the Frontier Parties on their cross-motion because, in that motion, the Frontier Parties did not seek a final judgment and because the exception involving declaratory relief does not apply. *See id*. But, the inquiry as to the availability of review and rendition does not end there.

---

[8] In their third issue, the Frontier Parties argue in the alternative that the agreement is ambiguous and that this court should consider parol evidence. Because the agreement is unambiguous, consideration of parol evidence would not be appropriate. *See White Oak Operating Co., LLC*, 362 S.W.3d at 734. In any event, we need not address the third issue.

[9] In the trial court, the Plank Parties asserted that all three of the Plank Parties are indemnitees under the Indemnity Provision. The trial court agreed and rendered judgment in favor of all three Plank Parties. Michael Plank and Russell Plank do not appear to be indemnitees under the Indemnity Provision. In any event, we presume, without deciding, that all three Plank Parties are indemnitees under this provision.

[10] In their fourth issue, the Frontier Parties challenge various evidentiary rulings of the trial court. Because it is unnecessary to overturn any of these evidentiary rulings to adjudicate this appeal, we need not and do not address the fourth issue.

This court recently held that, in *FDIC v. Lenk*, the Supreme Court of Texas modified the *Feldman* rule so that a court of appeals may render judgment on the cross-motion in a third scenario—when the moving parties in both motions seek summary judgment on the same issue.[11] *See Gastar Exploration*, —S.W.3d at—, 2013 WL 3693603, at *4 (addressing effect of *FDIC v. Lenk*, 361 S.W.3d. 602, 611–12 (Tex. 2012) on the *Feldman* rule and holding that court of appeals may render judgment on a cross-motion that does not fall within the scope of the *Feldman* rule to the extent that, in the cross-motion, the moving party seeks summary judgment on the same issue addressed in the other motion). In their summary-judgment motion, the Frontier Parties sought summary judgment on the same issue that was addressed in the Plank Parties' summary-judgment motion. Therefore, under this court's holding in *Gastar Exploration*, we may review the Frontier Parties' summary-judgment motion and render judgment based upon this motion. *See Gastar Exploration*, —S.W.3d at—, 2013 WL 3693603, at *4. Because, as discussed above, the Plank Parties' third-party claims fail as a matter of law, the trial court erred to the extent it denied the Frontier Parties' summary-judgment motion. Accordingly, we sustain the Frontier Parties' second issue. The appropriate appellate judgment is for this court to reverse the trial court's judgment

---

[11] Thus, in *Gastar Exploration*, this court held that the Supreme Court of Texas has modified the *Feldman* rule, a rule that has been applied by this court on numerous occasions. *See Continental Cas. Co. v. American Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Mosby v. Post Oak Bank*, 401 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Davis Gulf Coast, Inc. v. Smith Intern., Inc.*, No. 14-09-00838-CV, 2011 WL 1849084, at *8 (Tex. App.—Houston [14th Dist.] May 12, 2011, no pet.); *XTO Energy, Inc. v. Smith Production, Inc.*, 282 S.W.3d 672, 675 n.3 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *de Laurentis v. USAA*, 162 S.W.3d 714, 719 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Alaniz v. Rebello Food & Beverage, L.L.C.*, 165 S.W.3d 7, 20 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Smither v. Progressive County Mut. Ins. Co.*, 76 S.W.3d 719, 721 n.1 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

and, based upon the Frontier Parties' summary-judgment motion, render judgment that the Plank Parties take nothing by their claims. *See id*. at \*4, 10.

**C.     May this court remand for further proceedings regarding the Frontier Parties' counterclaim?**

In their motion for rehearing, the Frontier Parties assert that, in addition to reversing the trial court's judgment and rendering judgment that the Plank Parties take nothing by their claims, this court also should remand this case to the trial court for the limited purpose of allowing the Frontier Parties to prove and recover the expenses and costs, including reasonable attorney's fees, that they sought to recover in their counterclaim based upon a prevailing-party provision in the Settlement Agreement. In their summary-judgment motion, the Frontier Parties did not seek judgment on any of their counterclaims. In their summary-judgment motion, the Plank Parties did not mention or seek judgment as to any of the Frontier Parties' counterclaims. In its orders on these summary-judgment motions, the trial court did not dispose of any of the Frontier Parties' counterclaims. *See Harris County Appraisal District v. Johnson*, 889 S.W.2d 531, 532–33 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding). The trial court disposed of these counterclaims in its final judgment after trial, in which the trial court denied the Frontier Parties the relief they requested in their counterclaims. Though the Frontier Parties appealed from this final judgment, in their appellants' brief, they did not assign error as to the trial court's denial of recovery on their counterclaims in the final judgment.

The Frontier Parties assigned error as to the trial court's order granting the Plank Parties' summary-judgment motion and its order denying in part the Frontier Parties' summary-judgment motion, but, in these orders, the trial court did not adjudicate any of the Frontier Parties' counterclaims. The Frontier Parties have not

14

assigned error as to the trial court's denial of relief on their counterclaims, nor have they briefed any such alleged error. Accordingly, the issue of whether the trial court erred in denying recovery on the Frontier Parties' counterclaim based upon a prevailing-party provision in the Settlement Agreement is not before this court. *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (holding that "the court of appeals may not reverse a trial court's judgment in the absence of properly assigned error"); *Wilson v. Patterson*, No. 14-10-00943-CV, 2011 WL 4924252, at *1, n.1 (Tex. App.—Houston [14th Dist.] Oct. 18, 2011, no pet.) (concluding that certain alleged error was not before this court because appellant had not assigned error) (mem. op.). As explained above, the proper course based on the error assigned by the Frontier Parties is for this court to reverse the trial court's judgment and render judgment that the Plank Parties take nothing by their claims. Because any error regarding the Frontier Parties' counterclaims is not before this court, there is no basis for a remand to the trial court regarding any of these counterclaims. *See Karnes*, 717 S.W.2d at 903; *Wilson*, 2011 WL 4924252, at *1, n.1.

**D.    May this court consider the Plank Parties' conditional cross-point despite their failure to file a notice of appeal?**

In a conditional cross-point, the Plank Parties assert that the trial court erred in ruling that the Frontier Parties did not owe the Plank Parties a defense and indemnity for Westergren's claim against the Plank Parties based upon their failure to pay $1 million. We now consider whether we may grant the relief requested in this cross-point even though the Plank Parties have not filed a notice of appeal.[12]

---

[12] The Plank Parties' cross-point is conditioned on this court's reversal of the trial court's judgment in *Westergren v. National Property Holdings, L.P.*, Cause Nos. 14-11-00058-CV, 14-11-00229-CV. This condition has occurred. *See Westergren*,—S.W.3d at —, 2013 WL 4857689, at *26.

The trial court granted summary judgment in the Frontier Parties' favor on this issue. In their conditional cross-point, the Plank Parties seek to alter the trial court's judgment so that it awards them greater relief than the relief granted them by the trial court. But, the Plank Parties have not filed a notice of appeal. The Supreme Court of Texas has held that an appellee in the court of appeals who has not filed a notice of appeal may not seek to alter the trial court's judgment in a way that would award the appellee more relief than the trial court granted the appellee in its judgment. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002); *CHCA East, L.P. v. Henderson, D.D.S.*, 99 S.W.3d 630, 636 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Because the Plank Parties have not filed a notice of appeal, they may not seek to alter the trial court's judgment to award them more relief than the trial court granted in its judgment, and we may not consider their conditional cross-point. *See Lubbock County, Tex.*, 80 S.W.3d at 584; *CHCA East, L.P.*, 99 S.W.3d at 636.

The Plank Parties assert on rehearing that this court's intervening reversal of the trial court's judgment in *Westergren v. National Property Holdings, L.P.* constitutes "good cause" under Texas Rule of Appellate Procedure 25.1(c), which, according to the Plank Parties, allows this court to consider their cross-point despite their failure to file a notice of appeal. *See* Tex. R. App. P. 25.1(c) (stating that "[t]he appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause"). But, that same rule provides that "[a] party who seeks to alter the trial court's judgment or other appealable order *must* file a notice of appeal." Tex. R. App. P. 25.1(c) (emphasis added). And, an appellate court may grant a party who did not file a notice of appeal more favorable relief than the trial court granted without considering or sustaining appellate challenges from that party, for example, when

necessary to grant appellate relief to parties who have filed a notice of appeal. *See Ex parte Elliot*, 815 S.W.2d 251, 252 (Tex. 1991) (per curiam) (stating that reversal of an entire judgment even as it applies to nonappealing parties is appropriate if necessary to provide the appellant with "full and effective relief"). The *Lubbock County* court did not provide for a "just cause" exception to its rule that an appellee who has not filed a notice of appeal may not seek to alter the trial court's judgment to award the appellee more relief than the trial court granted the appellee. *See Lubbock County, Tex.*, 80 S.W.3d at 584. *See also City of Austin v. Whittington*, 384 S.W.3d 766, 789 (Tex. 2012) (agreeing with the proposition that a litigant who is attacking the trial court's judgment by seeking greater relief than the relief awarded in the judgment must file a notice of appeal). Under this binding precedent, we cannot consider the Plank Parties' conditional cross-point because, without having filed a notice of appeal, they seek to alter the trial court's judgment to award them more relief than the trial court granted.[13] *See Lubbock County, Tex.*, 80 S.W.3d at 584; *CHCA East, L.P.*, 99 S.W.3d at 636.

## V. CONCLUSION

In their summary-judgment motion the Frontier Parties sought summary judgment on the same issue that was addressed in the Plank Parties' summary-judgment motion. Therefore, this court may review the Frontier Parties' summary-judgment motion and render judgment based upon this motion. Under the unambiguous language of the Settlement Agreement, the Westergren Claims do not fall within the scope of the Indemnity Provision. Therefore, the Plank Parties'

---

[13] Even if there were a "just cause" exception, we still would not conclude that this court's intervening reversal of the trial court's judgment in *Westergren v. National Property Holdings, L.P.* constitutes "just cause" to allow the Plank Parties to assert their cross-point without having filed a notice of appeal.

third-party claims fail as a matter of law, and the trial court erred to the extent it denied the Frontier Parties' summary-judgment motion and granted the Plank Parties' summary-judgment motion. Accordingly, we reverse the trial court's judgment and render judgment that the Plank Parties take nothing by their claims.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and McCally.