# United States Court of Appeals
## For the First Circuit

No. 15-2494

THOMAS FRANGOS; FRANCES FRANGOS,

Plaintiffs, Appellants,

v.

BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON; NEW PENN
FINANCIAL, LLC, d/b/a Shellpoint Mortgage Servicing,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

John L. McGowan on brief for appellants.
Phoebe N. Coddington, Elizabeth T. Timkovich, and Winston &
Strawn LLP on brief for appellees Bank of America, N.A. and The
Bank of New York Mellon.
Joseph J. Patry and Blank Rome LLP on brief for appellee New
Penn Financial, LLC.

June 21, 2016

**STAHL**, <u>**Circuit Judge**</u>.  After twice defaulting on their mortgage, Thomas and Frances Frangos brought suit against the defendants, Bank of America, N.A. ("BoA"), The Bank of New York Mellon ("BoNYM"), and New Penn Financial, LLC, seeking to forestall a planned foreclosure sale of their home.  The Frangoses now appeal from the district court's entry of summary judgment in favor of the defendants.  Discerning no error, we AFFIRM.

### Facts & Background

In 2005, the Frangoses borrowed $599,000 to refinance an existing mortgage on their Portsmouth, New Hampshire home.  In exchange, the Frangoses pledged the home as collateral to secure a promissory note issued to the lender in the same amount.

Beginning in 2007, the Frangoses suffered financially as Mr. Frangos battled cancer and as the recession battered his construction business.  The Frangoses defaulted on the mortgage twice, first in 2007 and again in 2009.  After the first default, the loan was restructured, but, notwithstanding the restructuring, the Frangoses again fell into default.  It is undisputed that although the Frangoses' last mortgage payment was made in 2009, they continue to reside in the home to this day.

As often occurred during this period of time, after their initial issuance, the mortgage and the promissory note changed hands repeatedly in the secondary mortgage market.  In 2011, both

came to be held by BoNYM.[1]  From 2011 until 2013, BoNYM and the Frangoses engaged in protracted negotiations aimed at further restructuring the loan.  When these negotiations ultimately proved unsuccessful, a foreclosure sale was scheduled for September 2013.  On the eve of the sale, however, the Frangoses filed suit in New Hampshire state court, where they successfully obtained a preliminary injunction barring the sale from moving forward.

Although the foreclosure proceedings were later cancelled, the lawsuit remained pending.  After the removal of the action to the federal court, the Frangoses filed an amended complaint.  They sought an injunction permanently barring the defendants from foreclosing, as well as damages premised on BoA's alleged breach of a provision in the mortgage agreement obligating the lender to provide the borrower with a detailed notice of default and right to cure prior to foreclosing.

Ultimately, the district court granted summary judgment in favor of the defendants.  See Frangos v. Bank of Am., N.A., No. 13-CV-472-PB, 2015 WL 6829104 (D.N.H. Nov. 6, 2015).  With respect to the request for a permanent injunction, the district court found that because the foreclosure had been cancelled, the Frangoses could not make the necessary showing that they would suffer irreparable harm in the absence of injunctive relief.  Id. at *2

---

[1] The other defendants, BoA and New Penn Financial, serviced the loan (at separate times) on BoNYM's behalf.

(citing Global Naps, Inc. v. Verizon New Eng., Inc., 706 F.3d 8, 13-14 (1st Cir. 2013) (per curiam)). And, as to the claim for breach of the mortgage agreement's notice provision, the district court found that the Frangoses had not suffered compensable monetary damages. Id. at *2-3. This appeal followed.

## Discussion

We review de novo the district court's entry of summary judgment, assessing the record in the light most favorable to the Frangoses and resolving all reasonable inferences in their favor. Bingham v. Supervalu, Inc., 806 F.3d 5, 9 (1st Cir. 2015). The entry of summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

We conclude, with little difficulty, that the Frangoses' enumerated bases for reversal are without merit. For one, the Frangoses claim that the district court erred by denying their request for a permanent injunction. The Frangoses contend that they are entitled to such an injunction because a foreclosure might occur at any time even though the defendants have not yet complied with the notice requirements contained in the mortgage agreement.

This argument, however, overlooks the undisputed fact that the foreclosure commenced in 2011 was cancelled. In point of fact, the district court was presented with an uncontroverted sworn affidavit to this effect by an assistant vice president of BoA.

- 4 -

Thus, the district court correctly found that the Frangoses did not face irreparable harm in the absence of injunctive relief. See Global Naps, Inc., 706 F.3d at 13.

As a separate point, the Frangoses claim that the district court erred by relying "exclusively" on representations made by counsel for BoA and BoNYM at oral argument to the effect that, if the defendants were to recommence foreclosure proceedings in the future, they would do so only after complying with the notice requirements. According to the Frangoses, the district court could not rely on these "inherently speculative" representations because they were not part of the summary judgment record. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). The Frangoses draw our attention to the following exchange between the district court and the attorney representing BoA and BoNYM:

> The Court: [I]f I were to . . . grant summary judgment, . . . you would be free to reinstitute foreclosure proceedings?
>
> Counsel: Yes, sir, upon sending them notice required under the mortgage . . . .
>
> The Court: [W]ill you concede that you're not going to rely in any way, shape, or form on the prior notices before instituting foreclosure in this case?
>
> Counsel: Yes, sir.

We need not decide whether the representations were eligible for consideration because the Frangoses' argument simultaneously mischaracterizes the nature of the colloquy and overstates the import attached to counsel's representations by the district court. In our view, far from serving as the "exclusive[]" basis for the entry of summary judgment, this exchange was merely an attempt by the district court to clarify its understanding of the posture of the foreclosure proceedings. What is more, any suggestion that the district court improperly relied on counsel's representations is belied by the summary judgment record, which - independent of oral argument - established the following facts beyond dispute: (1) the Frangoses had defaulted on their mortgage (indeed, they had not made a payment in at least six years); (2) foreclosure proceedings had been commenced in 2011, but later cancelled; and (3) BoNYM, as the holder of both the mortgage and the promissory note, was eligible to recommence foreclosure proceedings in the future, provided, of course, that in doing so it complied with the terms of the mortgage agreement and New Hampshire law.[2] Under these circumstances, the entry of summary judgment in favor of the defendants was well founded.

---

[2] We acknowledge, but find meritless, the Frangoses' claim that the record is inconsistent on the issue of whether BoNYM currently holds both the promissory note and the mortgage.

Next, the Frangoses contend that the district court erred by awarding summary judgment to the defendants on their claim for breach of the mortgage agreement's notice provision. The district court rejected this claim on grounds that the Frangoses failed to present evidence of compensable monetary damages resulting from the alleged breach. See Concord Hosp. v. N.H. Med. Malpractice Joint Underwriting Ass'n, 694 A.2d 996, 998 (N.H. 1997) ("The party seeking damages in a contract action has the burden of proving the extent and amount of damages sustained as a result of the breach."). This was error, the Frangoses maintain, because although they admittedly do not seek monetary damages, they could have sought nominal damages at a later stage of the litigation.

We need not consider whether, under New Hampshire law, nominal damages alone are sufficient to support a claim for breach of contract because we conclude that the issue was waived. The Frangoses did not seek nominal damages before the district court, even when presented with a motion seeking summary judgment on grounds that they had failed to prove triable damages. Indeed, when asked repeatedly by the district court at oral argument whether his clients were seeking nominal damages, counsel for the Frangoses appeared to indicate that they were not. Thus, by advancing this newly minted theory of recovery for the first time on appeal, the Frangoses have waived the right, if any, to seek nominal damages. See Iverson v. City of Bos., 452 F.3d 94, 102-

- 7 -

03 (1st Cir. 2006) (noting that a theory of recovery "not squarely and timely raised in the trial court cannot be pursued for the first time on appeal[,]" particularly where the plaintiff failed to raise the theory in opposition to a dispositive motion).

## Conclusion

The judgment of the district court is AFFIRMED.[3]

---

[3] We reject out of hand as utterly frivolous the Frangoses' claim that they are entitled to attorney's fees under N.H. Rev. Stat. Ann. § 361-C:2, which provides for an award of fees in certain consumer cases to "prevail[ing]" parties.